## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DR. JENNY H. CONVISER and ASCEND CONSULTATION IN HEALTH CARE, LLC, | ) ) ) ) Case No. 1:20-cv-03094 |
| Plaintiffs, | ) ) |
| v. | ) Honorable Judge Jeffrey T. Gilbert |
| DEPAUL UNIVERSITY, | ) ) ) |
| Defendant. | ) |

### STIPULATED ESI PROTOCOL AND ORDER

This Stipulated ESI Protocol (the "Protocol") is entered into this 19th day of January, 2024 (the "Effective Date") by and between Plaintiffs Jenny H. Conviser and Ascend Consultation in Health Care, LLC ("Plaintiffs") and Defendant DePaul University ("DePaul") (collectively, the "Parties"). Having found good cause for the entry of this Protocol, the Court Orders as follows:

### DEFINITIONS

1. **"Document(s)"** includes every form of recorded information, whether handwritten memoranda, typed, printed, facsimile, computer, or otherwise generated including but not limited to letters, memoranda, electronic mail, attachments to electronic mail, voice mail, any mode of communication not specifically identified herein, word processing files, spreadsheets, power point documents, PDF documents, databases, graphic images, audio and video recordings, microfilm, and microfiche, and any electronically stored information. Each non-identical original or copy of a document, as well as each nonidentical storage medium, is a separate document.

2. **"ESI"** or **"electronically stored information"** means information that is stored electronically, regardless of the media or whether it is in its original format.

1

3. **"Extracted Text"** means the text extracted from a Native File and includes all header, footer, and document body information.

4. **"Identify"** when referring to Documents means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

5. **"Native File(s)"** or **"Native Format"** means the format of ESI in which it was created or is ordinarily maintained in the usual course of business.

6. **"OCR"** means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such documents searchable using appropriate software.

7. **"Tagged Image File Format"** or **"TIFF"** refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

## STIPULATED ESI PROTOCOL AND [PROPOSED] ORDER

1. <u>General Format of Production.</u> Whether originally stored in paper or electronic form, Documents shall be produced in electronic image form in the manner as described herein. Notwithstanding the foregoing provisions of this Paragraph, the Parties reserve the right to request that an alternative format or method of production be used for certain Documents, if such Document is not susceptible to production in the format or methods of production addressed herein. In that event, upon a timely and reasonable request, the parties will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

2. <u>Production Format.</u> Documents shall be produced according to the following formats:

   (a) <u>Electronic Production:</u> Except as set forth below, each Party will produce ESI in single TIFF format, or JPG format when producing color for color, with appropriate load files and corresponding multipage OCR text files. TIFF files shall be created directly from the original electronic documents; a Party may not create a TIFF file

of ESI by printing out paper copies of that electronic document and then scanning the paper copy of the ESI. All TIFF files will conform to the following specifications:

    i. All TIFF files will be black and white, single-page Group IV standard TIFF images (if possible, not less than 300 dpi resolution).

    ii. The producing Party shall provide (1) an image cross-reference load file (".OPT") providing the beginning and ending endorsed Bates number of each Document, a link to the relative file path of the Document's image(s), and the number of pages it comprises; and (2) searchable text or OCR files.

    iii. Embedded files shall be produced as a child to the parent Document to which they are embedded. Inline images and OLE objects should not be extracted from the documents in which they are embedded. The producing Party will generate and preserve the MD5 or SHA-l hash values of all ESI based on the non-spoliated source native file. The producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production: (1) all ESI shall be processed with a single time zone and a date and time setting that is, if possible, consistent across all of a party's productions; and (2) all TIFF images shall display tracked changes, comments and other rich data as displayed in the document, regardless of the display setting for this information as last saved by the custodian, to the extent technically possible.

    iv. The producing Party shall produce all sound and video files in Native Format.

    v. The producing Party shall produce spreadsheets in Native Format. In lieu of Bates-stamping spreadsheets produced in Native Format, the producing party shall title each file using a unique Bates number. In lieu

of endorsing spreadsheets produced in Native Format with any appropriate confidentiality designation required by any applicable protective order entered in this litigation, the producing Party shall include in the title of each file, as appropriate, a shorthand version of the appropriate confidentiality designation.

    vi. In the event that a Party locates a relevant file that is not capable of TIFF conversion, the Party shall produce a single page TIFF "placeholder" page for each such file bearing a Bates number and the file name, file type, and file extension.

(b) <u>Paper Documents</u>. For paper Documents, TIFF files shall be created by scanning either the original paper Documents or first-generation photocopies of the original paper Documents. Each page of paper should be output to a single page TIFF file. Distinct, logical document breaks should be defined as such in the load file described in Paragraph 2(a)(ii). In the case of an organized compilation of separate Documents (e.g., a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any Document or family relationship among the scanned Documents in the compilation should be reflected in the data load file at the appropriate standard fields. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties will make their best efforts to unitize the Documents correctly.

(c) <u>Extracted Text.</u> For ESI and any TIFF files created from paper Documents, the producing Party shall, wherever possible, provide full Extracted Text. The producing Party shall provide a single extracted or OCR text file, in ASCII text format and named per the Bates Number of the first page of each Document, for each ESI or TIFF file provided.

(d) <u>Document Unitization.</u> For electronic Documents, the relationship of

4

Documents in a Document collection (e.g., cover letter and enclosures, email and attachments, binder containing multiple Documents, or other Documents where a parent-child relationship exists between the Documents) shall be maintained through the scanning or conversion process from native format to TIFF, provided however, that the Parties shall only be required to present one level of parent child relationship. Document images generated from attachments to emails stored in Native Format shall be produced sequentially immediately after the parent email. All hard copy Documents imaged and produced electronically shall include a unitization file (i.e. "load file") as described above. When scanning paper Documents into Document images, they shall be unitized in a manner so as to maintain the Document(s) and any attachments, as they existed in their original state. Container files (for example .ZIP, .RAR, etc.) should be extracted from their container entities and delivered as discrete entities. Files shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files. When processing container files, the top-level container file should be severed from the extracted contents within it, such that the container file will not be processed as part of a parent/child relationship with its contents.

(e) <u>Native Files.</u> A Party may reasonably request Native Format files of electronic Documents from a producing Party only in accordance with the provisions of this Paragraph.

    i. No requesting Party may seek to compel production of Native Format files of electronic Documents on a wholesale or otherwise unreasonable basis. Any request for native Documents will be carried out under the following protocol: (1) the requesting Party shall make any such request within thirty (30) days after the close of discovery, or if a production is made after the close of discovery, within thirty (30) days after any such production is made; (2) the requesting Party shall provide a list of Bates numbers of the Documents that it is requesting

5

        be produced in native file format and will identify in writing those Native Files sought and the specific basis for the request; (3) the producing Party will respond in writing within fourteen (14) days; and (4) If the Parties are unable to agree, the Parties will submit the matter to the Court.

    ii. If the requesting Party believes the explanation supporting its need to review native files will reveal attorney work-product, the requesting Party may, at its discretion, submit such explanation in writing directly to the Court for *in camera* review.

    iii. If the Court determines that the explanation does not constitute attorney work-product, a copy of the requesting Party's explanation shall thereupon be provided to the producing Party.

    (f) <u>Decryption and Passwords.</u> The producing Party may employ reasonably available electronic measures to break the encryption of, or unlock, any encrypted or password protected Document and may clean any Document infected by a virus before making a production of such a Document, notwithstanding the fact that such measures may alter the native format of the Document. Upon request, the producing Party will explain to the receiving Party any such measures taken.

    3. <u>Search Terms:</u> The Parties have conferred to identify the relevant custodians of ESI related to this matter, as well as the timeframe and specific search terms associated with each custodian. While this categorical identification is not intended as an exhaustive list of potential materials and shall not be construed to waive a party's right to request additional ESI, or any party's right to object to production, the custodians, timeframes, and search terms listed in Exhibit 1 (attached) represent the categories of ESI agreed-upon at this time.

    4. <u>Databases:</u> Potentially responsive information that resides in a database and is not maintained in a Document format may be collected and produced in a manner that

is reasonably limited to the information relevant to the litigation and any reasonably necessary contextual information. Upon a timely and reasonable request, the Parties shall meet and confer on the manner in which such potentially responsive information shall be collected and produced. If an agreement cannot be reached during the meet and confer process, the Parties may submit the dispute to the Court. Specifically, the Parties agree that the ESI covered by this Protocol:

      a. <u>Email programs</u> (e.g., Outlook, Gmail, etc.);

      b. Personnel files;

      c. Servers owned or controlled by a Party;

      d. Any Cloud storage databases owned or controlled by a Party;

      e. Any other DePaul software used in the regular course of business.

5.    <u>Duplicates.</u> A producing Party who has more than one identical copy of an electronic Document (i.e. the Documents are actual duplicates) need only produce a single copy of that Document. A producing Party need not produce the same electronically stored information in more than one form. A Document may be removed as duplicative only if it is *identical* to another Document that is being produced, based on a comparison of MD5 or equivalent hash values. If the producing Party becomes aware of any file that was incorrectly filtered during the de-duplication process, the producing Party shall promptly notify the requesting Party and produce the file pursuant to the terms of this Stipulation. De-duplication shall be performed only at the Document family level so that attachments are not de-duplicated against identical standalone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the hash value field referenced above, and attachments to emails or other Documents shall not be disassociated from the parent email or Document even if they are exact duplicates of another Document in the production.

6.    <u>Ephemeral Data.</u> The following categories of ESI are not discoverable in this case: "fragmented," or "unallocated" data on hard drives; random access memory (RAM)

or other ephemeral data; and on-line access data such as temporary internet files, history, cache, cookies, etc.

       7.     <u>Bates Numbering</u>. Each page of a produced Document shall have a Bates number electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source Document. The producing Party will use a consistent prefix throughout the matter. If a producing Party produces Documents that were not Bates numbered, but that were received pursuant to a subpoena, the producing Party may use a different prefix to differentiate the fact that the original source of the Document came from a third party. No other legend or stamp will be placed on the Document image other than a confidentiality legend (where applicable), redactions, the Bates number identified above, and any other internal tracking number that the producing Party may choose to use. The confidentiality legend shall be "burned" onto each Document's image at a location that does not unreasonably obliterate or obscure any information from the source Document.

       8.     <u>Agreement to be Bound</u>. Vendors for all Parties shall be provided a copy of this Protocol and shall be bound by its contents.

       9.     <u>Amendment</u>. Nothing in this Protocol shall be construed to prohibit the undersigned Parties from agreeing to modify any provision of this Protocol or seeking relief from the Court. Nor shall anything in this Protocol or any Party's compliance be construed as a waiver of any Party's rights under any applicable rules. Nor shall anything in this Protocol be interpreted to require disclosure of information that is not relevant or proportional to the claims or defenses in this case or that is protected by any applicable privilege. Nor shall anything in this Stipulation be construed to waive any objections as to the production, discoverability, or confidentiality of ESI. In addition, nothing in this Protocol concerning the format in which Documents may be produced by a Party shall be construed as having any precedential effect in any other legal proceeding.

10. <u>Disputes</u>. Each Party shall comply with the Federal Rules of Civil Procedure, in addition to this Court's individual rules and orders. If a dispute arises under this Protocol that cannot be resolved through the meet and confer process, any Party may seek relief from the Court.

11. <u>Amendment</u>. This Protocol does not preclude Plaintiffs from seeking an order from the Court at a later time to modify this Protocol to allow additional discovery of relevant messages, including text messages, on devices owned or controlled by DePaul employees or former employees based on developments in ongoing discovery.

IT IS SO STIPULATED, THROUGH THE PARTIES' COUNSEL OF RECORD.

Dated this 19th day of January, 2024

By: /s/ *Amanda Brookhyser*
Michael S. Popok
Admitted *Pro Hac Vice*
Amanda J. Brookhyser
Admitted *Pro Hac Vice*
**ZUMPANO PATRICIOS & POPOK, PLLC**
134 East 38th Street
New York, NY 10016
Telephone: (212) 542-2564
Facsimile: (212) 320-0332

Art Bresnahan, Esq.
**ZUMPANO PATRICIOS & BRESNAHAN, LLC**
Law Firm No. 13698
829 N Milwaukee Avenue
Chicago, IL 60642
Telephone: (312) 924-3609
Facsimile: (312) 268-7179
*Attorneys for Plaintiffs*

By: /s/ *Brian P. Paul*
Brian P. Paul, #6280839
Kerryann M. Haase, #6237232
**MICHAEL BEST & FRIEDRICH LLP**
444 West Lake Street, Suite 3200
Chicago, IL 60606
Telephone: (312) 222-0800
Facsimile: (312) 222-0818
*Attorneys for Defendant*

.

9

FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.

DATED: January 22, 2024

_____
Hon. Jeffrey T. Gilbert
U.S. Magistrate Judge