Exhibit "1"

Exhibit "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. JENNY H. CONVISER and | ) | |
| ASCEND CONSULTATION IN | ) | |
| HEALTH CARE, LLC | ) | Case No. 20-CV-03094 |
| | ) | |
| Plaintiffs, | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| v. | ) | |
| | ) | |
| DEPAUL UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JENNY H. CONVISER'S AND ASCEND'S RESPONSES AND OBJECTIONS TO DEPAUL'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Plaintiffs Dr. Jenny H. Conviser ("Dr. Conviser") and Ascend Consultation in Health Care, LLC ("Ascend") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby respond to Defendant DePaul University's ("Defendant" or "DePaul") First Set of Interrogatories, dated September 15, 2023. The following responses are served by Plaintiffs without prejudice to their rights to utilize subsequently discovered facts, witnesses, and documents in this action. Plaintiff's investigation and discovery are ongoing in this action.

## PRELIMINARY STATEMENT

All responses contained herein are based only upon specific information and documents which are presently available and specifically known to Plaintiffs and thus Plaintiffs disclose only those contentions which are presently available. It is anticipated that further discovery, independent investigation, legal research, and analysis will supply additional information, establishing entirely new factual contentions and legal contentions. All of which may lead to substantial additions to,

2

changes in, and variations from the contentions set forth herein. The following responses are given without prejudice to this party's rights to produce evidence of any subsequently discovered fact or facts which Plaintiffs may recall later. Accordingly, Plaintiffs reserve the right to change any and all responses herein as additional facts are asserted and/or ascertained, analyses are made, and legal research is completed, and contentions are confirmed. These responses reflect Plaintiffs' efforts to supply as much factual information and as much specification of legal contentions as is presently known but should in no way operates to prejudice Plaintiffs in relation to further discovery analysis or research.

Further, to the extent that Defendant DePaul's Interrogatories and their Instructions and Definitions are inconsistent with the requirements of any applicable rules or case law, including Fed. R. Civ. P. 26 and 33, Plaintiffs will follow the applicable rules or case law in responding to the Interrogatories.

By making the accompanying responses and objections to DePaul's Interrogatories, Plaintiffs do not waive, and hereby expressly reserve, their right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiffs make the responses and objections herein without in any way implying that it considers the Interrogatories and responses thereto to be relevant or material to the subject matter of this action.

## <u>GENERAL OBJECTIONS</u>

These General Objections are incorporated into the responses below.

1.     Plaintiffs object to each request to the extent it seeks information that is not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence or, if relevant, so remote therefrom as to make its disclosure of little or no practical benefits to Defendant while imposing an unwarranted burden and expense on Plaintiffs in ascertaining and disclosing such information.

3

2.     Plaintiffs object to each request to the extent that it is not limited as to time or scope, and as a result, seeks discovery of information that is not reasonably calculated to lead to the discovery of admissible evidence or is unduly burdensome.

3.     Plaintiffs object to each Interrogatory to the extent it seeks information not within Plaintiffs' personal knowledge.

4.     Plaintiffs object to each Interrogatory to the extent that it seeks to impose on Plaintiffs obligations different form, or greater than, those required by the Federal Rules of Evidence, applicable Court rules, or order of the Court.

5.     Plaintiffs object to each Interrogatory on the grounds, and to the extent that, it seeks to impose on Plaintiffs any obligation greater than those specified by any applicable law.

6.     Plaintiffs object to each Interrogatory to the extent that it seeks information that is privileged or protected by the attorney-client privilege, the attorney work-product doctrine, or any other constitutional, statutory, common-law, or applicable privilege(s), right of privacy, or protection ("Privileged Information"), and Plaintiffs hereby assert such privileges. Any inadvertent disclosure of any Privileged Information shall not be deemed to constitute a waiver of any such privileges or doctrines.

7.     Plaintiffs object to each Interrogatory to the extent that it seeks expert opinion.

8.     Plaintiffs object to each Interrogatory that is vague and ambiguous, unintelligible, overbroad, or harassing.

/ / / / /

9.     Plaintiffs object to each Interrogatory to the extent that it seeks information protected or prohibited from disclosure under applicable law, including, but not limited to, the right of privacy, as well as any other confidentiality rights possessed by third parties.

10.     Plaintiffs object to each Interrogatory to the extent that it is philosophical, hypothetical, or subjective.

11.     Plaintiffs adopt the definitions used in each Interrogatory solely for the purposes of responding to each request, and not for any other purpose.

12.     Plaintiffs object to the disclosure of any information falling within any of the foregoing General Objections or to the specific objections as set forth below, and in the event any information falling within one or more of such objections is disclosed in any of the following responses to any request, such disclosure is inadvertent and shall not constitute a waiver.

13.     If any objection or qualification set forth in the preceding paragraphs above is not restated under the specific response to a request or is restated in some but not all such responses, this should not be construed as a waiver of any of the objections or qualifications not restated below.

14.     In addition to, and without waiving any of the foregoing General Objections, each of which applies to each and every one of the individual responses set forth below and is incorporated by reference therein, Plaintiffs respond as follows:

/ / / /

<u>**RESPONSES TO DEPAULS' FIRST SET OF INTERROGATORIES**</u>

**INTERROGATORY NO. 1:** Identify all Persons with knowledge or information relating to the allegations in Your Complaint, including a description of the knowledge or information each Person possesses or is believed to possess.

**RESPONSE TO INTERROGATORY NO. 1:** The following witnesses are expected have knowledge or information regarding the claims and defenses at issue in this litigation:

1. Jenny Conviser, Psy.D.
2. Erin Andris
3. Stephanie Blagaich
4. Allie Braden
5. Dylan Christensen
6. Haydn Christensen
7. Lynsey Ciezki
8. Corporate Representative Pursuant to FRCP 30(b)(6) - DePaul University
9. Jessica Cothern
10. Custodian of Records- DePaul University
11. Krista Dalgarn
12. Janine Douglas
13. A. Gabriel Esteban
14. Tom Fessel
15. Madison Fisher
16. Micah Fitzgerald
17. Celeste Franco
18. Kennedy Garcia
19. Kali Gardner
20. Mark Gant
21. Morgan Greenwood
22. Ana Greik
23. Sarah Halvorson
24. Skylor Hilger
25. Kelly Hogan
26. Jill Hollembeak
27. Cara Jimenez
28. Sabrina Kuchta
29. Kayla Landwehrmier
30. Eugene Lenti
31. Kandace Lenti
32. Michael Lenti
33. Megan Leyva
34. Candace Neid
35. Kate O'Brien

36. Nicole Pihl
37. Lindsay Platt
38. Jean Lenti Ponsetto
39. Elyse Rocco
40. Alysia Rodriguez
41. Angela Scalzitti
42. Kathryn Statz
43. Ashley Sunshine
44. Karen Tamburo
45. Dale Tobias
46. Sue Walsh
47. Missy Zoch

**INTERROGATORY NO. 2:** Identify all fact witnesses that You intend to call at trial or any hearing in this action, including the subject matter on which the witness is expected to testify and the substance of the fats to which the witness is expected to testify.

**RESPONSE TO INTERROGATORY NO. 2:** Plaintiffs reserve the right to call any witness who has been disclosed by either party in this matter. At this early stage in the litigation, before a single deposition has been taken, Plaintiffs have not determined who they intend to call as witnesses at trial, rendering this interrogatory premature at best. At the present time, this information is also protected from disclosure by the attorney-work product privilege.

**INTERROGATORY NO. 3:** Identify every current or former employee, manager, agent, or representative of DePaul with whom you have communicated regarding any allegations set forth in the Complaint, including the date of the Communication, the nature and substance of the Communication, and Identify any related Documents.

**RESPONSE TO INTERROGATORY NO. 3:** Dr. Conviser communicated with multiple individuals regarding the allegations set forth in Plaintiffs' Complaint and cannot remember the dates of those communications. Those individuals are identified in response to Interrogatory Nos. 1 and 4. To the extent Plaintiffs have in their care, custody or control, written communications

responsive to this Interrogatory that are relevant to this matter, responsive documents will be produced upon the entry of a Stipulated Confidentiality Order.[1].

**INTERROGATORY NO. 4:** Identify every current or former DePaul student with whom You have communicated regarding any allegations set forth in the Complaint, including the date of the Communication, the nature and substance of the Communication, and Identify any related documents.

**RESPONSE TO INTERROGATORY NO. 4:** Plaintiffs have a duty to protect the confidentiality of students with whom Plaintiffs and any other employee or agent of Ascend communicated regarding the allegations in the Complaint, including during treatment or other therapy sessions, pursuant to the Health Insurance Portability and Accountability Act as well as other professional ethical considerations. As a result, until the Court enters a Confidentiality Order in this case, Plaintiffs are not at liberty to reveal their identities. While maintaining that confidentiality, Plaintiffs disclose that they had the following communications:

| Team: | Violation / Concern: | Source of Information: | Reported to: | Outcome |
|---|---|---|---|---|
| Track & Field | Sex with coach in return for training and competition opportunities and to insure not being bullied, teased, or ridiculed in front of others (Spring 2017) | The athlete in question reported to me during a session. | Kathryn Statz, Sue Walsh, and the athlete's parents. | Was told by Kathryn Statz he was being transferred or leaving DePaul at the end of the 2017 season. |

---

[1] Plaintiffs' counsel provided opposing counsel with their redline edits to the proposed Confidentiality Order on October 5, 2023. To date, the opposition has not finalized the proposed Order nor submitted it to the Magistrate. If by close of business on October 18, 2023, DePaul's counsel does not finalize it with the undersigned, we will send a proposed order to the magistrate requesting that it be entered.

| | | | | |
|---|---|---|---|---|
| Women's Softball | Lenti calling women "Fucking Whores", too sensitive, bitches, etc. (2016) | Players during sessions and also during sessions with Ascend staff | Kathryn Statz, Sue Walsh, Jill Hollembeak<br><br>Dr. Conviser discussed risks with all softball coaches including Lenti during staff meetings. Provided a copy of Title IX Law, and information regarding how to build confidence and improve play. | Unknown |
| Track & Field | Bus full of team members traveling for competition in Long Beach, California overdosed on edibles/hallucinogens and taken to an ER. (April 2017) | Athletes in sessions | Kathryn Statz & Sue Walsh | Unknown |
| Men's Basketball | Reports of team members instructed to inflict pain on each other as directed by DePaul sports Psychologist Joel H. Fish, Ph.D. / www.psychologyofsport.com<br><br>(Date Unknown) | Basketball Players in therapy sessions | Sue Walsh & Kathryn Statz<br><br>-Dr. Conviser reported her concerns about him not having a "license to | Not aware of any follow-up. |

| | | | | |
|---|---|---|---|---|
| | | | practice" and description of his practices appeared unethical. | |
| Women's Volleyball | Team members and me videotaped without prior knowledge or permission. (October 16, 2015) | Volleyball Players and Dr. Conviser were present | Dr. Conviser reported to J. Lenti Ponsetto | Video recording not seen in subsequent team meetings. |
| Women's Volleyball | Players described team culture on campus permitted by coaching staff as drinking starting on Thursday night and continuing through Sunday. (Starting in 2015) | Volleyball Players during therapy sessions | Volleyball Coach and Kathryn Statz | No change reported. |
| Men's Soccer and Men's Basketball | Drinking and sex available during recruiting events (2016) | Soccer Recruit during a therapy session | Dr. Conviser reported it to Soccer Coach & Sue Walsh. Dr. Conviser warned of risk of violating recruiting rules, drinking age rules, and creating a drinking culture with associated risks if coaches were | Unknown. |

| | | | | |
|---|---|---|---|---|
| | | | recruiting under these conditions. | |
| Softball | Reports of Lenti hitting his players. | Various Players during therapy sessions | Told Sue Walsh and Jill Hollembeak. | Unknown. |
| Injured Athletes | Post injury, athletes may suffer lower mood, higher anxiety and may have greater mental health risk. (2017) | Many athletes inquired about this support. Therapists observed a need for additional support. | Requested support group for injured athletes: Sue Walsh, Jill Hollembeak, & J. Lenti, Ponsetto | No group support provided. |
| Athletes | Difficulty locating or accessing Mental Health Emergency Contact Information such as suicide risk, poison control, overdose, etc., when needed. (Date Unknown) | Athletes and National Data substantiated this need. | Dr, Conviser requested of Kathryn Statz, Sue Walsh, J. Lenti Ponsetto, and Jill Hollembeak that DePaul post signs in the athletic department, training facilities and locker room to increase awareness of what to | J. Lenti Ponsetto told me that the university would not allow signs to be posted on walls, in locker rooms or washrooms on campus. |

|  |  |  | do in the event of a mental health emergency and to improve access to mental health emergency services if needed. Provided samples of information on sample posters.<br><br>As an alternative, Dr. Conviser proposed that such information be posted on a website and made available to all athletes. | No action taken. |
| Athletes wanting support for reducing alcohol/marijuana use and/or to support sobriety | Some athletes felt that they were excluded from some events if they chose to abstain from drinking alcohol.<br><br>(starting in 2015) | Athletes inquired about this support. Therapists observed a need for additional support. | Dr. Conviser recommend starting a support group for athletes wanting to abstain or better control their | No support for this group was provided. |

| | | | intake to Sue Walsh, J. Lenti Ponsetto, Jill Hollembeak, Kathryn Statz | |
|---|---|---|---|---|
| International Athletes | International athletes may suffer lower mood, more isolation & higher anxiety and may have greater mental health risk. (2016) | Athlete reports during sessions and Dr. Conviser observations. | Requested support for international athletes: Kathryn Statz and J. Lenti, Ponsetto | No group support provided. |
| Softball | Reported high stress, high anxiety, dysphoric mood, suicide risk and self- injury risk, post sexual assault. (2017) | Softball Player during session | Reported to Sue Walsh | Not known. |
| Golf Team | Coach late to practice, competition or drunk during events. (Spring/March-April 2017) | Golfers during session with Ascend Staff | Reported to J. Lenti Ponsetto and Sue Walsh | No change reported. |

Responsive documents will be produced on a rolling basis upon the entry of a Stipulated Confidentiality Order.

**INTERROGATORY NO. 5:** Identify the Persons involved in the coach-student sexual relationship alleged in Your Complaint.

**RESPONSE TO INTERROGATORY NO. 5:** Plaintiffs have a duty to protect the confidentiality of students with whom Plaintiffs and any other employee or agent of Ascend communicated

regarding the allegations in the Complaint, including during treatment or other therapy sessions, pursuant to the Health Insurance Portability and Accountability Act as well as other professional ethical considerations. As a result, until the Court enters a Confidentiality Order in this case, Plaintiffs are not at liberty to identify the student-patient's identity. Plaintiffs reported the identity of the track and field coach to DePaul in 2017.

**INTERROGATORY NO. 6:** Identify, with specificity, each and every act You engaged in which You believe constitutes a statutorily protected activity and identify any related Documents.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiffs cannot recall every single statutorily protected activity that Dr. Conviser or other agents and employees of Ascend engaged in. However, pursuant to reporting requirements, Plaintiffs:

1. Reported to DePaul's Title IX office, counsel's office, and Athletics Department, including to Kathryn Statz, Sue Walsh, and the athlete's parents that a track & field coach was having sex with an athlete in exchange for training and competition opportunities and to insure not being bullied, teased, or ridiculed in front of others.

2. Reported to DePaul's Title IX office, counsel's office, and Athletics Department, including to Kathryn Statz, Sue Walsh and Jill Hollembeak that the women's softball coach Eugene Lenti called women "fucking whores" and "sensitive bitches." Dr. Conviser also reported to these same individuals and offices listed above that Eugene Lenti struck an assistant softball coach in the face.

3. Reported to DePaul's Title IX office, counsel's office, and Athletics Department, including to Kathryn Statz and Sue Walsh that a bus full of track & field team members traveled to a Long Beach, California competition and overdosed on hallucinogenic edibles and were taken to the ER.

4. Reported to DePaul's Title IX office, counsel's office, and Athletics Department, including to Kathryn Statz and Sue Walsh that DePaul's Sports Psychologist Joel H. Fish was not licensed to practice, and that his practices appeared unethical. During tenure of Head Coach Oliver Purnell, 2011-2015. For example, Dr. Conviser reported to DePaul that she had been told that Fish had instructed the DePaul men's basketball team to inflict pain on each other.

5. Reported to DePaul's Title IX office, counsel's office, and Athletics Department,

including to Kathryn Statz and Sue Walsh that Lenti recruited the most vulnerable female athletes who came from single-parent households and impoverished homes who suffered from low self-esteem, depression and/or suffered from abusive childhoods, as part of his grooming and predatory behavior.

Related documents will be produced upon the entry of a Stipulated Confidentiality Order and will continue to be produced thereafter.

**INTERROGATORY NO. 7:** Identify, with specificity, each and every Title IX "concern" You witnessed related to DePaul, as referenced in Your Complaint.

**RESPONSE TO INTERROGATORY NO. 7:** Plaintiffs cannot recall every single concern or potential violation of Title IX that Dr. Conviser or other agents and employees of Ascend observed or learned about through reports. Plaintiffs witnessed or became aware of the following and reported it to DePaul:

1. An athlete reported that she was having sex with the track & field coach in return for training and competition opportunities and to insure not being bullied, teased, or ridiculed in front of others (2017). Plaintiffs reported the issue and were told by Kathryn Statz that the Coach was being transferred.

1. Mr. Lenti calling women "Fucking Whores", too sensitive, bitches, etc. (2016). Plaintiffs reported these issues to Kathryn Statz, Sue Walsh and Jill Hollembeak and are not aware of any action taken in response.

2. Athletes reported to Dr. Conviser that a bus full of track & field team members traveling for competition in Long Beach, California overdosed on edibles and were taken to an ER. Plaintiffs reported these issues to Kathryn Statz and Sue Walsh and Plaintiffs are not aware of any action taken in response.

3. Athletes on the men's basketball team reported they were instructed to inflict pain on each other as directed by their sport Psychologist Joel H. Fish, Ph.D. / www.psychologyofsport.com, who is not a licensed psychologist. Plaintiffs reported these issues to Sue Walsh and Kathryn Statz. Plaintiffs are not aware of any action taken in response.

4. Members of the Women's volleyball team reported they were videotaped without prior knowledge or permission on 10/16/2015. Plaintiffs reported these issues to Jean Lenti Ponsetto. Plaintiffs are not aware of any action taken in response.

5. Women's volleyball team members described culture as drinking starting on Thursday night and continuing through Sunday. Plaintiffs reported these issues to the Volleyball Coach and Kathryn Statz. Plaintiffs are not aware of any action taken in response.

6. Men's soccer and basketball teams reported drinking and sex were available during recruiting events. Plaintiffs reported these issues to the Soccer Coach and Sue Walsh. Plaintiffs are not aware of any action taken in response.

7. Softball players reported being hit in the shoulders or stomach all the time (Spring, 2018). Plaintiffs reported these issues to Sue Walsh and Jill Hollembeak. Plaintiffs are not aware of any action taken in response.

8. Plaintiffs observed that post injury, athletes may suffer lower mood, higher anxiety and may have greater mental health risk. This was reported to Sue Walsh, Jill Hollembeak, and Jean Lenti Ponsetto in 2017, and additional support for injured athletes was requested. No group support was provided by DePaul.

9. Plaintiffs observed that the athletes had difficulty locating or accessing Mental Health Emergency Contact Information such as suicide risk, poison control, overdose, etc., when needed. Plaintiffs requested that information be displayed prominently in locker rooms, training facilities, and other athletic facilities to improve access. These requests were made to Kathryn Statz, Sue Walsh, and Jean Lenti Ponsetto. Plaintiffs were told by Jean Lenti Ponsetto that nothing could be posted on walls and no further action was taken.

10. Some athletes reported to Plaintiffs that they were excluded from some events if they chose to abstain from drinking alcohol. Plaintiffs observed that these athletes needed additional support and such was requested to Sue Walsh, Jill Hollembeak, J. Lenti Ponsetto and Kathryn Statz. No support for this group was provided by DePaul.

11. Plaintiffs observed that the international athletes needed support for lower mood, more isolation & higher anxiety and greater mental health risk. These issues were reported, and additional support requested from Kathryn Statz and Jean Lenti Ponsetto. No group support was provided.

12. A member of the softball team reported high stress, high anxiety, dysphoric mood, suicide risk and self-injury risk post sexual assault. This was reported to Sue Walsh but it is unknown if there was any response or support provided.

13. Members of the golf team reported the golf coach was late to practice and competition or was drunk during events. This was reported to Jean Lenti Ponsetto and Sue Walsh during the Spring/March-April 2017, but no action was taken.

**INTERROGATORY NO. 8:** Identify, with specificity, each and every Title IX "concern" You learned from a patient related to DePaul, as referenced in Your Complaint.

**RESPONSE TO INTERROGATORY NO. 8:** *See* Response to Interrogatory Nos. 4 and 7 above incorporated by reference.

**INTERROGATORY NO. 9:** Identify, with specificity, each and every report of a Title IX violation You made to DePaul and Identify any related Documents.

**RESPONSE TO INTERROGATORY NO. 9:** *See* Response to Interrogatory Nos. 4 and 7 above incorporated by reference. Related documents will be produced on a rolling basis upon the entry of a Stipulated Confidentiality Order.

**INTERROGATORY NO. 10:** Identify, with specificity, each and every report You made to any Person regarding Eugene Lenti and Identify any related Documents.

**RESPONSE TO INTERROGATORY NO. 10:** It was first reported to Dr. Conviser in 2006 that athletes were feeling demeaned by Eugene Lenti and that he was verbally abusive. Plaintiffs reported in 2016 to Sue Walsh, Jill Hollembeak, and Kathryn Statz that Eugene Lenti was verbally abusive to his players, including calling them "fucking whores" and "sensitive bitches" and that he punched an assistant coach in the face. Plaintiffs also reported that softball players affirmed that Eugene Lenti would hit them in the shoulders and stomach. The violations were ongoing, and each time Plaintiffs became aware of one, it was reported to the Title IX office and Sue Walsh, Jill Hollembeak, and Kathryn Statz. Related documents will be produced on a rolling basis upon the entry of a Stipulated Confidentiality Order.

**INTERROGATORY NO. 11:** Identify and describe, with specificity, each report you provided to Sue Walsh and Kathryn Statz following a meeting with Eugene Lenti and his staff, as described in the Complaint, and Identify any related Documents.

**RESPONSE TO INTERROGATORY NO. 11:** *See* Response to Interrogatory Nos. 4, 7 and 10. Related documents will be produced on a rolling basis upon the entry of a Stipulated Confidentiality Order.

**INTERROGATORY NO. 12:** Identify, with specificity, each and every act of DePaul that You allege was retaliatory.

**RESPONSE TO INTERROGATORY NO. 12:** After a steady flow of referrals from DePaul for the entirety of her association with it, there was a dramatic decrease in referrals to Dr. Conviser after Title IX violations were reported. Students were told that DePaul's insurance was no longer covering Dr. Conviser's services and DePaul ordered Dr. Conviser to cease treating a student-athlete right in the middle of their treatment. Only three new athletes began care after Title IX violation reports during April of 2018. By 2019, all referrals ceased. Dr. Conviser had hard conversations about where to send suicidal students without support from DePaul. There was no transition for the students from Dr. Conviser's services to someone else, leaving them abandoned and without support. Students were reassigned to someone else without warning. Even though the Agreement between Plaintiffs and DePaul did not terminate until June 30, 2021, the Agreement was terminated early as a result of Dr. Conviser's reports. Dr. Conviser incorporates herein the allegations as stated in her Second Amended Complaint (Dkt. No. 47).

**INTERROGATORY NO. 13:** Identify, with specificity, each and every act of DePaul that You allege constitutes breach of Your agreement with DePaul.

**RESPONSE TO INTERROGATORY NO. 13:** *See* Response to Interrogatory No. 12.

**INTERROGATORY NO. 14:** Itemize the amount of monetary damages, to date, that You seek in Your Complaint, including the calculation you used to determine the amount claimed.

**RESPONSE TO INTERROGATORY NO. 14:** Plaintiffs are in the process of calculating their past and ongoing damages for contractual and economic losses and retaining an expert to assist in the calculation of damages in the case and will supplement this Response accordingly. Damages in this case will include lost profits, lost future profits, economic loss occasioned by being separated from DePaul, reputational harm to Plaintiffs and resulting loss in income and revenue, and attorneys' fees, and costs.

Date this 16th day of October 2023.

**ZUMPANO PATRICIOS POPOK & HELSTEN, PLLC**

/s/ Michael S. Popok

Michael S. Popok
(Admitted *pro hac vice*)
New York Bar No. 2475226
134 East 38th Street
New York, New York 10016
212-542-2564
MPopok@zplaw.com

Amanda J. Brookhyser
(*Admitted pro hac vice)*
Nevada Bar No. 11526
1210 South Valley View Blvd., Suite 215
Las Vegas, Nevada 89102
702-583-3326
ABrookhyser@zplaw.com

Art Bresnahan, Esq.
ZUMPANO, PATRICIOS &
BRESNAHAN, LLC
Law Firm No. 13698
829 N. Milwaukee Avenue
Chicago, IL 60642

## <u>VERIFICATION</u>

I, Dr. Jenny H. Conviser am the Plaintiff in the above action and I have read the foregoing **JENNY H. CONVISER'S AND ASCEND'S RESPONSES AND OBJECTIONS TO DEPAUL'S FIRST SET OF INTERROGATORIES** and the same is true to the best of my knowledge and belief. I swear under the penalties of perjury in the State of Illinois the foregoing is true and correct.

_Jenny h Conviser, PsyD_
_____
DR. JENNY H. CONVISER

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am employed at

ZUUMPANO PATRICIOS POPOK & HELSTEN, PLLC and that on the 16th day of October 2023,

I caused a true and correct copy of the forgoing **RESPONSES AND OBJECTIONS TO**

**DEPAUL'S FIRST SET OF INTERROGATORIES** to be served by email to;


Brian P. Paul, #6280939
Email: bpaul@michaelbest.com
Kerryann M. Haase, #6237232
Email: khminton@michaelbest.com
**MICHAEL BEST & FRIEDRICH, LLP**
444 West Lake Street, Suite 3200
Chicago, IL 60606
Telephone: (312) 222-0800
Facsimile: (312) 222-0818
*Attorneys for Defendant*


By:*/s/ Michelle Wade*
An employee of **ZUMPANO PATRICIOS POPOK
& HELSTEN, PLLC.**